PITCHIOS v. JONES et al. (DAHLQUIST et al., Interveners)

No. 4957. Decided August 21, 1930. (290 P. 958).

*Thomas & Dahlquist,* of Salt Lake City, for appellants.

*A. C. Cole,* of Bingham Canyon, and *Ben. F. Johnson,* of Salt Lake City, for respondent.

STRAUP, J.

This action was brought to quiet title and recover possession of a small strip of ground between premises owned by Pitchios and W. S. and Ina Jones, situate in the town of Bingham Canyon, Utah. In his complaint, Pitchios by metes and bounds described a somewhat rectangular parcel of land owned by him, the east end of which north and south described as being 22.5 feet, the west end 23.1 feet in width, and the length of the parcel east and west as being 90 feet, and alleged that the defendants W. S. and Ina Jones wrongfully possessed and withheld from the plaintiff "a small strip of said land on the south line thereof," the title to which the plaintiff sought to quiet and recover possession of it. No other description was given of the area claimed to be in dispute and which as alleged was possessed by the defendants and withheld from the plaintiff. The defendants interposed a general and also a separate special demurrer to the complaint; the special demurrer being on the ground of uncertainty as to the alleged strip in dispute and possessed by the defendants. Both demurrers were overruled. The defendants answered denying that the plaintiff was the owner of the lands described in his complaint, that they wrongfully or otherwise possessed any premises owned by the plaintiff, and alleged that they owned, possessed, and occupied premises lying immediately to the south of and adjoining plaintiff's premises, and that the plaintiff had no right, title, or interest or right of possession to any part of the lands or premises possessed or occupied by the defendants. The defendants further alleged that they and the plaintiff acquired their respective premises from common grantors, Nellie R. and R. T. Dahlquist, who prior to any grant to either the plaintiff or the defendants owned both parcels as one tract or parcel of land; that in June, 1926,

the Dahlquists entered into a written contract with the plaintiff to sell and convey to him premises known and described as "the Royal Candy Company," under terms and conditions, among others, that the plaintiff "would stand 50 per cent of the expense of one or two walls to be erected on the remaining portion of the property retained by the grantors and that the plaintiff was to retain one-half interest in one of said walls adjoining his property on the south thereof," and that the Dahlquists "offered to build the walls referred to in said contract but the plaintiff refused so to do"; that the plaintiff, through fraud and misrepresentation, thereafter and on December 8, 1926, induced the Dahlquists to execute and deliver to plaintiff a quitclaim deed to the premises referred to in the contract and which the Dahlquists had agreed to convey to him, the plaintiff in such particular as alleged representing that the description in the deed covered only the premises described in the contract and no more, when in fact it covered "some additional ground," which was not discovered by the Dahlquists until long thereafter and not until about the time of the commencement of this action; and that if the quitclaim deed described premises other than the premises known as "The Royal Candy Company," the deed was executed and delivered under a mutual mistake of fact. The defendants thus prayed that the plaintiff take nothing by his complaint, and that the court enter judgment "that the plaintiff is the owner only of the premises known as 'The Royal Candy Company.'"

The Dahlquists intervened and set up substantially the same defenses as were set up by the defendant, and prayed "that the court do equity in the premises," that the court order "a survey of the premises known as The Royal Candy Company, and that the deed from the interveners to the plaintiff be reformed to cover only said premises and that if said deed covers more than the premises known as The Royal Candy Company," it be decreed that the plaintiff has no right, title, or interest therein or thereto.

Neither by the answer of the defendants nor of the interveners is it alleged what was the area of the premises known as "The Royal Candy Company," or in what particular or to what extent there was any difference or variance between the descriptions in the contract of sale and the quitclaim deed executed and delivered by the Dahlquists to the plaintiff, other than the general allegation that the defendants were "informed and believed" that the quitclaim deed "included some additional ground not included in the contract of sale. A reply, in effect a general denial, was filed to the affirmative matters alleged in the answers.

The case was tried to the court, who on specific findings found the issues in favor of the plaintiff, adjudging him to be the owner and entitled to the possession of all of the premises as described in his complaint and in the quitclaim deed, and quieted title thereto in him. The defendants and the interveners appeal.

No complaint is made of the overruling of the general demurrer. The overruling of the special demurrer is complained of. It is urged the court ought to have required the plaintiff to make the complaint more certain and specific as to the area of land in conflict and claimed to be occupied, possessed, and withheld from the plaintiff by the defendants. Since the plaintiff by his complaint did not complain that the whole of the premises described by him in his complaint was possessed or claimed by the defendants, and alleged that only a small portion thereof, a small strip on the south line thereof was so possessed and withheld, good pleading required the plaintiff to define the strip with more certainty than was done. However, in view of the defendants' answer and of the issues tendered thereby, of the evidence adduced and the theories on which the parties tried and presented the case, we think no prejudicial harm resulted from overruling the special demurrer.

The evidence shows, and the court found, that at and prior to June 1, 1926, the Dahlquists in the town of Bingham Canyon owned a parcel of land mostly in lot 8, block 6, plat

A, Wilkes official survey of Bingham Canyon, about 90 feet long running east and west, in width north and south at the east end 34 feet fronting on the main or principal street of the town, in the center of the parcel a width north and south of about 60 feet, and at the rear or west end in width about 48.6 feet. A candy store or shop called "the Royal Candy Company" was maintained on the north portion of the parcel or tract, and a pool hall called the "Copper King Pool Hall" on the south portion of the parcel or tract. Both buildings or stores were under one roof, with a 10-inch plaster or plaster board partition between them, both fronting on Main street, the pool hall on the corner of Main street intersecting another street running parallel with or along the south boundary of the parcel or tract. The plaintiff occupied the candy store and the defendants the pool hall, each paying rent to the Dahlquists.

On June 1, 1926, the Dahlquists by contract sold and agreed to convey to the plaintiff the north portion of the tract owned by them, a somewhat described rectangular parcel 21.5 feet in width north and south fronting on Main street, and about 90 feet in length east and west, described in the contract by metes and bounds, and further described as "the place now occupied by The Royal Candy Company." The candy store is on the parcel so contracted to be sold and conveyed to the plaintiff, and, as described in the contract, the south line of the parcel sold and to be conveyed to the plaintiff is the south line of the plaster partition between the candy store and the pool hall. But in the contract it further is stipulated that "the purchaser (Pitchios) agrees to stand fifty percent of the expenses of one or two walls to be erected on the remaining portion of the property retained by the vendor, (the Dahlquists) at some future time agreed upon by both parties. The purchaser to retain one-half interest on wall adjoining his property."

When the quitclaim deed was executed by the Dahlquists to the plaintiff, which was on December 8, 1926, it, as de-

scribed therein by metes and bounds, granted unto the plaintiff a parcel of land about 90 feet in length running east and west, 22.5 feet in width north and south fronting on Main street "to the center of a wall not yet constructed" between the property conveyed to the plaintiff and the Copper King Pool Hall property. The dimensions or width of the wall to be so constructed was not specified in either the contract or in the quitclaim deed. Evidence, however, was given to show that the wall so contemplated was to be a concrete wall 2 feet in width extending along the entire length of the property. Thus by the contract the plaintiff was given a parcel of land 21.5 feet fronting on Main street and *extending to a wall to be constructed on property retained by the Dahlquists,* and in which wall the plaintiff was to have an interest by paying one-half of the expenses of its construction, and by the quitclaim deed he was given a frontage on Main street of 22.5 feet *to the center of a wall not yet constructed between the parcel of land conveyed to the plaintiff and the Copper King Pool Hall,* which wall, as shown by evidence was to be 2 feet in width.

After the execution and recordation of the contract and quitclaim deed to the plaintiff, the Dahlquists in April, 1927, entered into a contract with the defendants W. S. and Ina Jones agreeing to sell, and on June 1, 1927, gave them a quitclaim deed conveying to them the south portion of the tract and on which was the pool hall. The portion so conveyed to them was also described by metes and bounds, a parcel about 90 feet east and west, about 26 feet north and south at the west end, about 37 or 38 feet north and south at the center, and 11.5 feet north and south at the east end and fronting on Main street to "center line wall between the Copper King Pool Hall."

After the conveyances, the plaintiff and the defendants as before occupied their respective premises, the plaintiff the candy store and the defendants the pool hall. There is a conflict in the evidence as to the willingness of the parties

to construct the contemplated wall between their properties and a dispute between them as to the location of the wall. The proposition, in substance, may be put thus: The defendants were not opposed to the construction of the wall, providing the south line of the wall was put on the south line of the plaster partition wall, thereby giving the defendants a frontage of 11.5 feet or more on Main street clear of any wall; the plaintiff willing and desirous of having the wall constructed, providing the whole of it was put south of the plaster or partition wall, and partly on the 11.5 feet of the property of defendants fronting on Main street. In August, 1928, the plaintiff in writing notified the defendants that he was desirous of building a common concrete wall between his property and that of defendants to enable him to put one or more stories on his building and as a protection to him as well as to the defendants against fire; that, in the event the defendants were not willing to join him in building a common wall, it would be necessary for the plaintiff to build a separate wall occupying the ground to which his deed gave him title, and asked the defendants to indicate their disposition in the matter. The defendant ignored and paid no attention to the notice or request. That, and the stated dispute between the parties, is what in fact gave rise to this lawsuit, though somewhat buried or at least cloudily expressed by the pleadings.

At the trial much time was consumed by the defendants attempting to show that the plaintiff by his quitclaim deed was given one foot more ground fronting on Main street than was given him by his contract. Though that were true, it was no concern of the defendants, who acquired their grant after the quitclaim deed was given the plaintiff, for the Dahlquists, when the quitclaim deed was given, then owned the whole tract, and had the right to grant the plaintiff a parcel of land greater than that called for by the contract. If in such case the Dahlquists subsequently granted to the defendants a foot or more of

ground theretofore conveyed to the plaintiff, the defendants had no cause to complain as against the plaintiff. But the defendants and the interveners attempted to show that, through fraud practiced by the plaintiff on the Dahlquists, not on the defendants, and by misrepresentations made by him to the Dahlquists, not to the defendants, and because of mutual mistake, not between the plaintiff and the defendants, but between him and the Dahlquists, the Dahlquists were induced by the quitclaim deed to grant the plaintiff a foot of ground fronting on Main street more than was called for by the contract and more than was intended to be conveyed by the quitclaim deed to the plaintiff. The court, however, directly and specifically found all that against the defendants and the interveners and in favor of the plaintiff. Complaint is made of such findings as being against the evidence. We think they are supported by a fair preponderance and by the greater weight of the evidence. That any fraud was practiced by the plaintiff on the Dahlquists, or that he made any misrepresentations as to the contents of the deed or otherwise, the evidence is vague and quite unsatisfactory. The Dahlquists claimed that the deed was prepared by a scrivener procured by the plaintiff and that they signed it, believing the description in the deed was the same as in the contract. That was disputed by the plaintiff, who claimed the deed was prepared by the grantors themselves or by some one procured by them. The court found, and the finding is amply supported, that the Dahlquists well knew at the time the deed was executed just what property was described therein and transferred and conveyed thereby. In the next place, there does not seem to be any substantial difference or variance between the descriptions of the property in the contract and in the quitclaim deed. As is seen, by the description in the contract, the Dahlquists agreed to convey to the plaintiff a parcel of land 21.5 feet in width to a wall to be constructed on the portion of ground retained by the Dahlquists; and by the

description in the quitclaim deed the Dahlquists conveyed to the plaintiff a parcel of land 22.5 feet in width to the center line of a wall to be constructed between the property granted to the plaintiff, and the pool hall property. If the contemplated wall was to be 2 feet in width, the plaintiff, both by the contract and by the deed, was given a frontage of 21.5 feet on Main street and no more clear of the party wall, or 22.5 feet to the center of it. While both the contract and the deed of the plaintiff refer to a wall to be constructed, yet in neither is the character or dimensions of the wall defined or specified. But there is evidence, though somewhat in conflict, to show the contemplated wall was to be a concrete wall 2 feet in width. And, in the quitclaim deed to the defendants, the width of the parcel granted them, the 11.5 feet fronting on Main street ran to "the center line of wall between the Copper King Pool Hall," which, if not clearly expressed, yet, when considered in the light of all the circumstances, undoubtedly was intended to the center of a wall to be constructed between the properties granted to the defendants and to the plaintiff. The Dahlquists had 34 feet of ground fronting on Main street. Without question they intended to convey the whole of it to the plaintiff and to the defendants. In the deeds to both, reference is made to a contemplated wall between the parcels granted to them. With a separate ownership of parts of the tract, we gather from the record that a concrete wall, something more than a mere plaster partition, between the separate parcels conveyed was not only desirable but reasonably necessary, and, as shown by the evidence, regarded as a protection against fire and to decrease insurance rates. In fact there is not much dispute as to that. It thus is reasonably clear that it was the intention to give the plaintiff a parcel of land 22.5 feet in width, on Main street, and the defendants 11.5 feet in width on Main street, each to the center line of a wall to be constructed between the two parcels. So considering the matter, each party in fact has just what his deed calls for,

the plaintiff 22.5 feet on Main street to the center of a wall, and the defendant 11.5 feet on Main street to the center of a wall. On the record we think that is what all the parties concerned expected and intended when the grants were made. In such view there is not anything to reform.

The trial court by its decree quieted the title in the plaintiff to a specific parcel of land described by metes and bounds and as described in the complaint and in plaintiff's deed, giving him 22.5 feet fronting on Main street, without reference to any wall between his property and that of the defendants. But that, in view of the record, does not give the plaintiff the right to erect or to require the erection of a wall wholly south of the south line of the 22.5 feet and wholly on the 11.5 feet of the defendants, for, it is to be remembered that by his deed he is not given 22.5 feet to a wall, but to the center of a wall, to be erected between his property and that of the defendants. Whether in view of the descriptions of the grants, or on the record, an easement of a common or party wall is granted or reserved to the extent that either party may compel or require a construction of a reasonable and proper common party wall between their properties and each to pay his proper proportion of the expense thereof, is a proposition in no way argued or presented by briefs of counsel, and concerning which we express no opinion. However, if the plaintiff desires to erect a reasonable and proper wall between the properties, and if the defendants refuse to join with him in the erection of a common party wall, the plaintiff has the undoubted right at his own expense to erect a separate wall for his own use and benefit, but not beyond the south side line of his 22.5 feet, in which case, the defendants may not without the consent of the plaintiff claim or have any interest in or to the wall or to the use of it. Whether the plaintiff without the consent of the defendants may do more than that by partly extending the wall beyond the south line of his 22.5 feet, either at his own expense, or

compel contribution thereof from the defendants and give them an interest in the wall, we, for the reasons just stated, express no opinion. But certain it is, that, if the defendants claim or desire to claim an interest in or to a common party wall, and to the center of it, they are required to yield a sufficient amount or space of their ground adjoining that of the plaintiff on the south and equal to the amount or space yielded by the plaintiff within his 22.5 feet, upon which to erect the wall and bear one-half of the expense of its construction.

The judgment of the court below is affirmed, costs to the plaintiff.

CHERRY, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and FOLLAND, JJ., concur.